**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**PARKERSBURG DIVISION**

UNITED STATES OF AMERICA,

               Plaintiff,

v.                                      CRIMINAL ACTION NO. 6:04-00127-01

KIRT R. KING,

               Defendant.

Pending before the court is a pro se Letter-Form Motion for Compassionate Release, [ECF No. 916], and a Supplemental Emergency Motion for Compassionate Release, [ECF No. 920], filed by Defendant, Kirt R. King. For the reasons that follow, the Motions are **DENIED**.

## I.    Background

Mr. King was convicted by a jury of engaging in a conspiracy to distribute 500 grams or more of cocaine in violation of 21 U.S.C. § 846; distribution of cocaine in violation of 21 U.S.C. § 841(a)(1); possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); possession of firearms in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c)(1)(A)(i); and conspiracy to commit money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and (ii). [ECF No. 415]. On June 16, 2005, I sentenced Mr. King to a term of imprisonment of a total of 240 months. I imposed a term of imprisonment of 180 months for the drug trafficking and money laundering convictions. *Id.* I further imposed a consecutive 60 month term of

imprisonment for the 18 U.S.C. § 924(c)(1)(A)(i) conviction. *Id.* Following Mr. King's release from custody, I directed that Mr. King serve a 60 month term of supervised release. *Id.* The Bureau of Prisons ("BOP") website indicates Defendant's release date is August 25, 2021.

Mr. King is currently housed at Federal Correctional Institution ("FCI") Petersburg Medium, in Hopewell, Virginia. FCI Petersburg Medium is a medium security institution that houses 1,450 inmates. *See FCI Petersburg Medium*, Fed. Bureau of Prisons, https://www.bop.gov/locations/institutions/pem/ (last visited July 28, 2020). BOP reports that there are currently no inmates with positive tests. BOP reports that only 98 inmates have been tested and 20 of those tests a pending for results. *See COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited July 28, 2020).

Mr. King suffers from several chronic medical conditions. *See* Ex. C [ECF No. 921–1]. He has asthma, though his medical records do not indicate the degree of severity. *Id.* He is prescribed a Mometasone Furoate inhaler and nasal spray to be administered every day to treat his condition. *See id.* He has a debilitating genetic disorder, Ehlers-Danlos Syndrome, which is a connective tissue disorder that causes pain and swelling in his joints. *See id.* Mr. King has reported that due to this disorder, he suffers from constant pain throughout his body and has limited mobility. *See id.* Mr. King has also been treated at FCI Petersburg for hypothyroidism, high cholesterol, and esophageal reflux disease within the past eighteen months. *See id.*

He now requests compassionate release based on the combination of his health

issues, the COVID-19 pandemic, and prison conditions. Mr. King represents that he has no objections to the Court imposing additional restrictive conditions, such as home confinement, to his term of supervised release for the unserved portion of his original sentence of imprisonment.

## II.    Discussion

The First Step Act "embodies Congress's intent to reduce the Bureau of Prison's authority over compassionate release petitions and authorizes the district courts to exercise their independent discretion to determine whether there are 'extraordinary and compelling reasons' to reduce a sentence." *United States v. Galloway*, No. CR RDB-10-0775, 2020 WL 2571172, at *3 (D. Md. May 21, 2020) (internal citations removed); *see also United States v. Stephenson*, No. 3:05-CR-00511, 2020 WL 2566760, at *5 (S.D. Iowa May 21, 2020) ("Unqualified deference to the BOP no longer makes sense now that the First Step Act has reduced the BOP's role.").

For me to reduce Mr. King's sentence under compassionate release, I must find that he has exhausted his administrative remedies, has demonstrated "extraordinary and compelling reasons" for release, is not a danger to the safety of others, and find that his release is consistent with § 3553(a) factors. *See e.g., United States v. Howard*, No. 4:15-CR-00018-BR, 2020 WL 2200855, at *2 (E.D.N.C. May 6, 2020); U.S.S.G. § 1B1.13 (2018). He has not satisfied all of those requirements, and I do not reduce his sentence today.

(a) Exhaustion

Section 3582(c)(1)(A) provides that:

> … the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, *whichever is earlier*, may reduce the term of imprisonment…

18 U.S.C. 3582(c)(1)(A) (emphasis added). Prior to the enactment of the First Step Act, only the Director of BOP could file a motion for compassionate release. The First Step Act amended this provision to permit an inmate to file a motion in federal court seeking compassionate release, provided certain circumstances were satisfied. Put plainly, the court may modify a term of imprisonment upon the earliest of one of three events:

1. When the Director of BOP has made a motion;

2. When the defendant has exhausted his or her administrative remedies with BOP and petitioned the court;

3. When 30 days have lapsed from the date of the request to BOP and defendant has petitioned the court.

*Id.*

The language of the statute is clear. There are two ways for a defendant to petition the court for compassionate release. Those two options are alternatives. With the first option, the defendant must fully complete BOP's administrative appeals process. With the second option, "the statute's plain text states only that thirty days must past after the defendant requests compassionate release from the warden. No

more, no less." *United States v. Carter*, ---F. Supp.3d----, ---, No. 2:19-CR-00078, 2020 WL 3458598, at *2 (S.D.W. Va. June 25, 2020).

Mr. King submitted requests for compassionate release to the Warden of FCI Petersburg Medium on April 13, 2020, April 15, 2020, and April 21, 2020. *See* Ex. A [ECF No. 920–1]. On May 27, 2020, the Warden issued a written denial of Mr. King's May 8, 2020, request for a compassionate release/reduction of sentence. *See* Ex. B [ECF No. 920–2]. Defendant petitioned the court on June 22, 2020 and then again on July 9, 2020. Thirty days have elapsed since the Warden's receipt of Defendant's requests for release. I **FIND** Mr. King has met the necessary criteria outlined in § 3582(c)(1)(A) to petition this court for compassionate release.

## (b) Extraordinary and compelling reasons for release

Once an inmate has satisfied administrative exhaustion, courts may reduce their sentences upon a finding of "extraordinary and compelling reasons." *See* 18 U.S.C. § 3582(c)(1)(A).

There are "disagreements [among district courts] about the precise definition of 'extraordinary and compelling reasons' justifying compassionate release."[1] *United States v. Cotinola*, No. 13-CR-03890-MV, 2020 WL 2526717, at *3 (D.N.M. May 18,

---

[1] The specific "extraordinary and compelling reasons" listed in the Sentencing Guidelines for BOP to consider include i) the defendant is suffering from a terminal or serious medical condition; ii) age of defendant; iii) family circumstances of defendant; and iv) "other reasons." U.S.S.G. § 1B1.13; *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *3–4 (N.D.N.Y. May 27, 2020). "Following the passage of the First Step Act, courts may independently determine whether such 'other reasons' are present in a given case, without deference to the determination made by BOP." *United States of America v. Thaher,* No. 17 CR. 302-3 (KPF), 2020 WL 3051334, at *4 (S.D.N.Y. June 8, 2020).

2020). But many courts, including this court, have found "'extraordinary and compelling' reasons 'supporting release on the basis of a combination of dire prison conditions and underlying health conditions that increase the likelihood of severe illness from COVID-19.'"[2] *United States v. White*, No. 2:17-CR-00198-4, 2020 WL 3244122, at *3 (S.D.W. Va. June 12, 2020) (citing *United States v. Bass*, No. 1:10-CR-166 (LEK), 2020 WL 2831851, at *7 (N.D.N.Y. May 27, 2020)); *see also United States v. Sawicz*, No. 08-CR-287 (ARR), 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and conditions at FCI Danbury); *United States v. Foreman*, No. 19-CR-62, 2020 WL 2315908, at *2–4 (D. Conn. May 11, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension and age of 58, in combination with conditions at FCI Danbury); *United States v. Scparta*, No. 18-CR-578 (AJN), 2020 WL 1910481, at *2, 9 (S.D.N.Y. Apr. 20, 2020) (finding an "extraordinary and compelling reason" on the basis of the inmate's hypertension, age of 55, and conditions at FCI Butner, which had 60 infected inmates); *United States v. Soto*, No. 18-CR-10086, 2020 WL 2104787, at *2 (D. Mass. May 1, 2020) (finding

---

[2] "Section 1B1.13 of the United States Sentencing Guidelines contains the only policy statement issued by the Sentencing Commission pertaining to compassionate release," which has not been updated since the passage of the First Step Act. *See Bass*, 2020 WL 2831851, at *3; U.S.S.G. § 1B1.13.[2] Thus, courts have taken this to mean that "there does not currently exist, for purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'" *See e.g., United States v. Redd*, 2020 WL 1248493, at *6 (E.D. Va. Mar. 16, 2020); *United States v. Brant*, No. 218CR20155TGBMKM1, 2020 WL 2850034, at *4 (E.D. Mich. June 2, 2020); *United States v. Brooks*, No. 07-CR-20047-JES-DGB, 2020 WL 2509107, at *3 (C.D. Ill. May 15, 2020).

an "extraordinary and compelling reason" on the basis of the inmate's hypertension and the presence of 27 reported inmate cases in his facility). I previously granted compassionate release to a defendant who was immunocompromised—suffering from a liver disease, Hepatitis C. *See White*, 2020 WL 3244122, at *6; s*ee also Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 23, 2020) (listing "immunocompromised state" as an underlying medical condition causing an "increased risk for severe illness from COVID-19").

I recently held in *United States v. John Delaney Wilson*, ---F. Supp.3d----, ---, No. 2:18-cr-00295, 2020 WL 4287592 at *2 (S.D.W. Va. July 27, 2020), that I should not find "extraordinary and compelling" reasons exist to grant release because of COVID-19 unless the inmate has a condition that makes him or her more at risk for developing a serious illness from COVID-19 and the facility where the inmate is housed has conditions such that its inmates are at a high risk of contracting COVID-19. In deciding which conditions result in an inmate being a higher risk for COVID-19, I will defer to the Centers for Disease Control and Prevention's (the "CDC") list of medical conditions causing an increased risk of severe illness from COVID-19. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 28, 2020). Using CDC guidance will

allow for more predictable standards in deciding which defendants have "extraordinary and compelling" reasons justifying release.

In *Wilson*, I also emphasized that if an inmate can demonstrate that he or she has a condition identified by CDC, next, the defendant must show that his or her prison conditions are such that BOP cannot effectively prevent the spread of COVID-19. Factors include but are not limited to the steps BOP has taken to stop the spread of COVID-19 in that particular prison and steps to follow CDC guidance, the ability of inmates to socially distance, the amount of hygiene products and face masks provided to inmates, and the number of COVID-19 cases in that prison.

Here, Mr. King has presented some evidence that he has a condition that makes him at risk for developing a serious illness from COVID-19. Although I have no doubt that Ehlers-Danlos syndrome seriously impacts Defendant's life, the CDC does not identify the condition as one that increases the risk of developing a serious illness from COVID-19 and Defendant has not provided any evidence to suggest otherwise. *See Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited July 28, 2020); *See also United States v. Catledge*, No. 12-CR-00678-MMC-1, 2020 WL 1899401, at *2 (N.D. Cal. Apr. 16, 2020) ("…the motion nonetheless fails, as Ehlers-Danlos Syndrome has not been identified by the Centers for Disease Control as a condition creating a high risk of severe illness from COVID-19"). Similarly, the CDC does not identify Defendant's other conditions hypothyroidism, high cholesterol, or esophageal reflux

disease as conditions that create a high risk of severe illness from COVID-19. *See*

*Coronavirus Disease 2019 (COVID-19): People with Certain Medical Conditions*,

CDC,       https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-

with-medical-conditions.html (last visited July 28, 2020).

Defendant also suffers from asthma. *See* Ex. C [ECF No. 921–1]. The CDC

identifies moderate-to-severe asthma as a condition that might increase the risk of

developing a serious illness from COVID-19. *See id.* People suffering from asthma

may experience higher risks of serious illness because "COVID-19 can affect [their]

respiratory tract (nose, throat, lungs), cause an asthma attack, and possibly lead to

pneumonia and serious illness." *United States v. Adeyemi*, No. CR 06-124, 2020 WL

3642478, at *5 (E.D. Pa. July 6, 2020) (citing *Centers for Disease Control and*

*Prevention,   People   who   Need   to   Take   Extra   Precautions*,   CDC,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-

higher-risk.html (last visited June 9, 2020)). Mild asthma, however, is not listed. Mr.

King's records indicate that he is prescribed a Mometasone Furoate inhaler and nasal

spray to be taken daily. *See* Ex. C [ECF No. 921–1]. Mr. King also represents to the

court that he uses this medication daily. *See* Suppl. Emergency Mot. [ECF No. 920]

9. In addition, Mr. King is prescribed an albuterol inhaler to be used as needed. *See*

Ex. C [ECF No. 921–1]. Mr. King's medical records do not categorize the severity of

his asthma, but they do indicate that as of the fall of 2019, his condition is "controlled

with medication" and that he is "stable on current regimen." *Id.*

Turning  to  the  facility  where  Defendant  is  located,  Mr.  King  has  not

demonstrated that he is housed at a facility with a high risk for contracting COVID-19.  As previously mentioned, Mr. King is housed at FCI Petersburg Medium. There are currently no confirmed positive tests of COVID-19 amongst inmates or staff at this facility. *COVID-19 Cases*, Fed. Bureau of Prisons, https://www.bop.gov/coronavirus (last visited July 28, 2020). While the number of positive COVID-19 tests in a facility is not dispositive of BOP's ability to prevent the spread of the virus, a high number of positive cases is a clear indication that a person housed at a facility is at high risk. Absent that showing, it is difficult to evaluate the particularized threat of the virus to a defendant. I am concerned that the reported positive tests at FCI Petersburg Medium do not accurately reflect the actual number of cases in the facility. BOP reports that only 93 of the 1,450 inmates have been tested and 20 of those tests are pending results. *See id.* Nevertheless, I will not find that a facility presents a high risk simply based on speculation. While any number of COVID-19 cases within the prison context is great cause for concern, simply a generalized assertion of the existence of the pandemic alone should not independently justify compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

I do not find that Mr. King has presented "extraordinary and compelling reasons" for his release. Mr. King has shown only that he might have a condition identified by the CDC as placing him at a heightened risk for developing serious illness from COVID-19. He has not demonstrated that he currently has a high risk of contracting the virus at FCI Petersburg Medium. Because Mr. King has not provided

"extraordinary and compelling reasons" to reduce his sentence, I end my analysis here and **DENY** his Motions.

### III.   Conclusion

Defendant's pro se Letter-Form Motion for Compassionate Release, [ECF No. 916], and Supplemental Emergency Motion for Compassionate Release, [ECF No. 920], filed through and by his counsel, are **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Order to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

ENTER:     July 29, 2020

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE